GEORGE JOHNSON, RESPONDENT, *v.* CHARLES R. TYNG, APPELLANT.

*An agreement, terminable by ten days' notice, continues in force for ten days after such notice is given — default therein — waiver.*

Under an agreement, entered into by a manufacturer, owning a steel rolling-mill, with a vendor of steel, the latter agreed to furnish crude steel, and the former to manufacture it, at a fixed rate of compensation. The agreement was to continue during the mutual pleasure of the parties, and to terminate only after two months' notice, This agreement was afterwards terminated upon notice, at which time there was $331.56 due to the plaintiff.

Thereafter the parties entered into an agreement which was to continue for five years, during which the vendor of steel was to have the exclusive sale of the entire product, with a credit of sixty days from the date of each monthly account within which to pay the amount thereof; and in case of his failure to make payment as provided for, it was stated therein that the agreement should, upon ten days' personal notice, be null and void.

This last-mentioned agreement was performed on both sides for about a year, at the end of which time it was claimed by the manufacturer that the vendor had made default in one of his payments, and a notice of ten days terminating the agreement was given by the manufacturer, who immediately stopped work.

In an action brought by the manufacturer to recover a balance due under each of these agreements, it was claimed by the defendant that the plaintiff could not recover the money sued for, because he had failed to perform the contract under which these moneys were earned, and that the breach of the contract had caused damage to the defendant.

*Held*, that, in view of the negotiations between the parties, which resulted in the making of the second agreement, any defaults which might have taken place

under the first agreement were waived, and that a right of action existed against the defendant for the amount due under the first agreement at the time the second agreement was entered into.

That, under the second agreement, the manufacturer having at once stopped work, instead of waiting until the ten days fixed by the contract had expired, had broken the terms of this agreement.

That as it was necessary, in order that the plaintiff should recover the amount which he claimed under this contract, that he should show that he had performed it, no right of action existed in his favor and he could not recover for the work done prior to its breach.

APPEAL by the defendant Charles R. Tyng from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 19th day of March, 1890, in favor of the plaintiff, after a trial at the New York Circuit before the court without a jury.

*T. M. Tyng*, for the appellant.

*J. C. O' Connor, Jr.*, for the respondent.

VAN BRUNT, P. J.:

This action was brought to recover certain moneys claimed to be due by defendant to plaintiff. The plaintiff was a manufacturer, working a steel rolling-mill, and the defendant was a vendor of steel.

In 1879 the defendant made an agreement with the father of the plaintiff, by which he agreed to furnish crude steel to the father of the plaintiff, the latter to manufacture it for him at a fixed rate of compensation. The agreement was to continue during the mutual pleasure of the parties and to terminate only after two months' notice of such discontinuance and the completion of all contracts then entered into. In December, 1881, the father of the plaintiff died, and subsequent thereto the defendant entered into an agreement with the plaintiff, who had succeeded to his father's interest in the mill, which had, in the meantime, been removed to Pennsylvania. This agreement was a continuation of the agreement theretofore made between the defendant and plaintiff's father, and provided that the defendant should supply raw material, and the plaintiff was to work it up and defendant was to pay plaintiff at the prices fixed in the agreement, and that the agreement was to terminate on two months' notice. Under this agreement the parties

continued business over two and a half years, until the 16th of July, 1884, when notice was given terminating the same two months thereafter. At this time there was $331.56 due under this second agreement, and the plaintiff stopped working thereunder.

On the 31st of July, 1884, the parties entered into a third agreement, which provided for its continuance for five years, during which the defendant was to have the exclusive sale of the entire products of the plaintiff's mill, with a credit of sixty days from the date of each monthly account, within which to pay the amount thereof.

It further provided, that in case the defendant should fail to make payment as provided in the agreement, that the agreement should, upon ten days' personal notice, be null and void. This third agreement was performed on both sides for a year after it was made until the 25th of July, 1885; at that time it being claimed by the plaintiff that the defendant had made default in one of his payments, he gave defendant the notice of ten days, terminating the agreement, and immediately stopped work. There was a balance claimed to be due upon this third agreement at this time, and for the balance due under the second agreement, and under this third agreement this action was brought, and recovery was had for the whole amount, and from the judgment thereupon entered this appeal is taken.

The claim of the defendant is that the plaintiff cannot recover the moneys sued for, because he failed to perform the contract under which these moneys were earned, and that the breach of the contract caused the defendant certain damages as alleged in the counter-claim.

It seems to us, in view of the negotiations between these parties which resulted in the making of the third agreement, that whatever defaults may have taken place under the second agreement were waived, and that the plaintiff would have a right of action against the defendant for the amount due under that second agreement at the time at which the third agreement was entered into.

The case, in respect to the claim made under the third agreement, however, is entirely different. By the terms of the third agreement the plaintiff was to have the right to terminate the same in case the defendant should fail to make payment as therein provided

upon ten days' personal notice.    And the plaintiff expressly states, in the course of his cross-examination, that the object of requiring the ten days' notice was to enable the defendant to hold on to the agreement for these ten days.

It appears from the uncontradicted evidence in the case that, instead of waiting till the end of the ten days to stop work, at which time the agreement became null and void by its terms, the plaintiff stopped work instantly and refused to go on during the period of these ten days, and thus broke the agreement upon his part.   The terms of the agreement did not provide that the agreement should become null and void in case the defendant failed to make payment in accordance with its terms; but it gave the plaintiff the option, in case of such failure, to terminate the agreement by giving ten days' notice, such termination evidently to take place after the expiration of the ten days for which the notice had been given.    Therefore, the position of the plaintiff is a breach upon his part of the terms of the agreement under which he claims judgment against the defendant.    In order that the plaintiff should recover these various sums of money which he claims, it was necessary for him to show that he had performed the contract on his part, and until he established that proposition no right of action in his favor existed.   The plaintiff not only did not establish this proposition, but it was proven that he broke the agreement himself by failure to comply with its terms. This being the condition of the proof, we do not see how the plaintiff can recover for the work done prior to the breach.

It is urged that by the provisions of the agreement the plaintiff was to have a lien upon the termination of the agreement upon all the material which was sent to him by the defendant in case of a breach.    But that lien did not exist until the expiration of the ten days after the giving of the notice, and after the agreement had become null and void.    The provision is as follows: "It is further agreed that in case the party of the second part shall fail to make payments as above provided, this agreement shall upon ten (10) days personal notice, be null and void, and any sum or sums which may at such time be due the party of the first part, shall be a lien upon any stock or material belonging to the party of the second part, which may then be in the mill."    The words "at such time" evidently refer to the time when the agreement shall become null

and void, namely, ten days after notice. "The material belonging to the party of the second part which may *then* be in the mill." The phrase "*then*" applies clearly to the time when the agreement becomes null and void, as aforesaid on the tenth day after the giving of the notice, otherwise no effect can be given to the requirement of *ten days'* notice.

There is nothing in the agreement going to show that because of the failure of the defendant to pay pursuant to its terms, the plaintiff had a right then to stop. The parties had expressly provided otherwise; they had expressly provided that for ten days after defendant had been in default, he could claim that the plaintiff should perform his part of the contract although the defendant had failed to perform his. The parties having contracted in this manner, the plaintiff cannot be heard now to claim that he should not be bound by the provisions of his contract.

We think, therefore, that the judgment was erroneous and that the same should be reversed and a new trial ordered, with costs to appellant to abide event.

BRADY and DANIELS, JJ., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.